UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 16-CR-0031 (PJS/HB) |
| Plaintiff, | |
| v. | ORDER |
| DONALD GIBSON, | |
| Defendant. | |

Joseph H. Thompson, UNITED STATES ATTORNEY'S OFFICE; and Ryan R. Raybould, UNITED STATES DEPARTMENT OF JUSTICE, for plaintiff.

Jordan S. Kushner, for defendant.

After a five-day trial, a jury convicted defendant Donald Gibson of five counts of tax evasion and one count of passing a fictitious instrument. ECF Nos. 32, 71, 77. Gibson moved for acquittal under Federal Rule of Criminal Procedure 29—both orally (at the end of the government's case) and in writing (after the trial). ECF No. 80. The Court denied Gibson's motion insofar as it applied to Counts One, Three, Four, Five, and Six of the superseding indictment, which charged him with tax evasion. ECF No. 76. But the Court asked for further briefing regarding Gibson's motion insofar as it applied to Count Two, which charged him with passing a fictitious instrument. Having reviewed that briefing, the Court now denies Gibson's motion for acquittal on Count Two.

In ruling on a motion for acquittal, the Court must view the evidence in the light most favorable to the government, resolve any evidentiary conflicts in the government's favor, and accept any "reasonable inferences that may be drawn in favor of the verdict." *United States v. Jenkins*, 758 F.3d 1046, 1049 (8th Cir. 2014).  The Court cannot overturn the verdict for insufficient evidence unless no reasonable jury could have convicted the defendant on the basis of the government's evidence.  *Id.*

Gibson's conviction for passing a fictitious instrument related to two bonds that Gibson mailed to the IRS in 2012, after the IRS informed Gibson that he owed more than $330,000 in back taxes.  (Gibson had stopped filing tax returns and paying income taxes in 2004, which was the basis of his convictions for tax evasion.)  Instead of paying his tax bill with cash, a check, a money order, or a credit card, Gibson sent two documents to the IRS:  (1) a "Private Offset Discharging and Indemnity Bond" and (2) a "Private Offset Bond."  In these "bonds," Gibson purported to authorize the IRS to pay his back taxes by withdrawing funds from a secret account containing millions of dollars that the United States Treasury supposedly held on his behalf.  For this conduct, the jury convicted Gibson of violating 18 U.S.C. § 514(a), which penalizes anyone who, "with the intent to defraud . . . passes, utters, presents, offers, brokers, [or] issues . . . any false or fictitious instrument, document, or other item appearing, representing, purporting, or

contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States."

Gibson argues that his conviction under § 514(a) is not supported by sufficient evidence for two reasons:

First, Gibson argues that the bonds that he sent to the IRS did not appear, represent, or purport to be "issued under the authority of the United States." *See* ECF No. 80 at 1-2. Those bonds were labeled as "private" bonds, not government bonds. *See* Gov't Exs. 143A, 143C. They were issued "to the order of"—not "by"—the Secretary of the Treasury. *Id.* And they did not bear any official seal, signature, or statement explicitly indicating that they were "issued under the authority of the United States." *See id.*

Unfortunately for Gibson, however, a bond need not purport to be issued by a government agency to support a conviction under § 514(a). Rather, it is sufficient for the bond to claim to *draw* from some sort of account maintained by the United States government. For example, in *United States v. Getzschman*, 81 F. App'x 619 (8th Cir. 2003) (unpublished opinion), the Eighth Circuit concluded that a fictitious instrument that claimed to draw from a nonexistent "Treasury Direct Account" "clearly f[e]ll within the meaning of § 514(a)." *Id.* at 620, 622. Similarly, in *United States v. Murphy*, 824 F.3d 1197 (9th Cir. 2016), the Ninth Circuit held that the evidence was sufficient to support the

jury's finding that four "bonded promissory notes" "were issued under the authority of the United States." *Id.* at 1200, 1204.  Each note was made payable "to the order" of the Secretary of the Treasury.  *Id.* at 1200.  Each of those notes was purportedly secured by a "private discharging and indemnity bond" and "private offset bond."  *Id.*  And documents accompanying the notes appeared to authorize the government to "pay [the defendant's] taxes from an account created for him, and held on his behalf, by the United States government."  *Id.* at 1204.

Gibson's conduct is not materially distinguishable from the conduct of the defendants in *Getzschman* and *Murphy*.  The bonds issued by Gibson were also labeled as "private offset" and "private discharging and indemnity" bonds.  Gov't Exs. 143A, 143C.  Those bonds were also made payable "to"—or "to the order of"—the Secretary of the Treasury.  *Id.*  And those bonds also purported to draw from some sort of Treasury account, with one of the bonds explicitly identifying several government entities as co-holders of the account being accessed.  *Id.*  Here, then, as in *Getzschman* and *Murphy*, the government's evidence was sufficient to allow a reasonable jury to conclude that the bonds appeared, represented, or purported to be "issued under the authority of the United States."

Second, Gibson argues that his bonds did not appear, represent, or purport to be "actual . . . financial instruments."  *See* ECF No. 80 at 2-4.  He notes that the bonds

lacked many of the "hallmarks" of genuine government bonds, such as "presidential portraits" or "official seals." *Id.* at 3. He also notes that the government was able to quickly determine that these bonds were fake. *Id.* at 3-4.

Section 514(a), however, does not require a fake instrument to "appear similar to an existing financial instrument," as long as the fake instrument "credibly hold[s] itself out as a negotiable instrument." *United States v. Howick*, 263 F.3d 1056, 1067-68 (9th Cir. 2001). In other words, § 514(a) "criminalizes even bogus obligations that a prudent person might . . . [reject], so long as those documents bear a family resemblance to actual financial obligations." *Murphy*, 824 F.3d at 1204 n.1 (quoting *Howick*). For example, in *Getzschman*, the defendants claimed to own millions of dollars in "Treasury Direct Accounts"—accounts that do not actually exist. *Getzschman*, 81 F. App'x at 620. The defendants then proceeded to "create money orders and sight drafts drawn on their Treasury Direct Accounts to pay for goods and services." *Id.* After the defendants were convicted of violating § 514(a), they questioned whether the "fictitious treasury direct money orders and sight drafts they used" could "purport to be actual . . . financial instruments." *Id.* at 621. The Eighth Circuit responded by noting that § 514(a) is not limited to "actual" financial instruments; instead, it "covers wholly nonexistent types of financial instruments." *Id.* at 622 (citing *United States v. Pullman*, 187 F.3d 816, 823 (8th Cir. 1999)).

It is true that, unlike the fake instruments in *Howick*, Gibson's fake bonds did not contain any "presidential portraits," "official seals," or "statements [claiming] that the notes were 'legal tender for all debts public and private.'" *Howick*, 263 F.3d at 1069. But the bonds nevertheless "b[ore] a family resemblance to actual financial obligations." *Id.* at 1068. They were printed on heavy stock paper. They had elaborate borders, ink signatures and thumbprints, issuance and expiration dates, and repeated references to real government officials and agencies. *See* Gov't Exs. 143A, 143C. Moreover, one of the bonds stated that "[a]ll such liabilities, duties, obligations, and debts shall be ledgered against this Bond . . . and shall pay, satisfy, offset, and discharge, Dollar for Dollar, all such obligations fully and completely." Gov't Ex. 143A at 4. Taken as a whole, the government's evidence was sufficient to allow a reasonable jury to find that these bonds appeared, represented, or purported to be "actual . . . financial instrument[s]," as § 514(a) requires.

For these reasons, the Court denies Gibson's motion for acquittal on Count Two of the superseding indictment.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant Donald Gibson's motion for acquittal on Count Two of the superseding indictment [ECF No. 80] is DENIED.

Dated: January 17, 2017        s/Patrick J. Schiltz
                               Patrick J. Schiltz
                               United States District Judge